76 Cal.Rptr. 891]

[Civ. No. 9203.   Fourth Dist., Div. Two.   Apr. 16, 1969.]

W. I. JACKSON et al., Plaintiffs and Respondents, v. W. W. TAYLOR, JR., et al., Defendants and Appellants.

Dennis D. Hayden for Defendants and Appellants.

Miller, Nisson & Kogler and C. Arthur Nisson for Plaintiffs and Respondents.

McCABE, P. J.—Action to recover on a promissory note secured by a second deed of trust.

The question before this court is whether the second deed of trust executed by defendants in favor of plaintiffs and securing a promissory note is one for purchase money within the meaning of section 580b of the Code of Civil Procedure which would exempt defendants from any personal obligation to plaintiffs. We have decided that it was a purchase money deed of trust given to secure the note.

Plaintiffs, W. I. Jackson and Clara A. Jackson, seek to recover on a promissory note in the original amount of $7,000, dated February 25, 1965, executed by defendants, W. W. Taylor, Jr., and Barbara L. Taylor, as makers. The note was secured by a second deed of trust on two parcels of real property, both of which parcels have been sold pursuant to the power of sale provisions contained in first deeds of trust held by a third party lender. Defendants filed an answer in the action asserting as a defense that the note in question was secured by a purchase money deed of trust on real property and that, therefore, recovery was barred by the provisions of section 580b of the California Code of Civil Procedure. On December 6, 1967, the trial court granted plaintiffs' motion for a summary judgment. The judgment was entered in favor of plaintiffs and against defendants in the sum of $6,730.82

in the sum of $1,000. From this judgment, defendants appeal.
together with costs in the sum of $152.85 and attorneys' fees

The subject property was initially sold by plaintiffs to
Clifford Roden and Velma Roden on November 7, 1961, for
the sum of $10,000 (apparently plaintiffs' equity). In connec-
tion with the sale, plaintiffs received from the Rodens a
$6,700 promissory note secured by a purchase money deed of
trust on the subject real property. That deed of trust was
made second and subordinate to a first deed of trust held by
Mission Savings and Loan Assn. After purchasing the
property, the Rodens improved it by constructing seven dwell-
ing units for rental purposes.

In August 1964, the Rodens defaulted on the first deed of
trust. Missions Savings and Loan Assn. recorded a notice of
default and election to sell under its first deed of trust. The
Rodens were also in default in their obligations under the
1961 note and second deed of trust held by plaintiffs. Plain-
tiffs attempted to secure a purchaser for the real property in
order to protect their purchase money promissory note, but
were unable to do so.

On February 5, 1965, the Rodens contracted to sell the
property to defendants. As a part of the transaction, plaintiffs
were induced to surrender their promissory note made by
Rodens and caused the trustee to reconvey the real property
which was subject to their second deed of trust. The induce-
ment for this action was a new promissory note for a larger
amount, $7,000, the representation of defendants' net worth,
and the payment of $739.69 in cash to plaintiffs.

In connection with defendants' purchase, the property was
described as two separate parcels and defendants executed a
separate first deed of trust on each parcel in favor of Atlas
Federal Savings & Loan Assn. for a loan of $55,200. There is
some conflict in the affidavits and counter-affidavits as to the
degree of participation by plaintiffs in the transaction. Plain-
tiffs contend that they did not know the amount of the selling
price of the real property or the amounts to be secured by first
deeds of trust on the property. Defendants contend that
plaintiffs knew the approximate amount of the first deeds of
trust.

In September 1966, under the power of sale contained in its
deed of trust, Atlas Federal Savings & Loan Assn. caused the
property to be sold at trustee's sale for a total sales price of
$57,779.67, including trustee's fees. The security for plain-
tiffs' promissory note was, by this said trustee's sale, entirely

exhausted. At the time the property was sold, there was due plaintiffs the sum of $6,043.41 on principal, plus interest at seven per cent per annum from April 21, 1966.

On appeal, defendants contend that (1) the trial court wrongfully entered what amounts to a deficiency judgment against them because plaintiffs' promissory note was secured by a purchase money deed of trust; (2) the affidavits and counter-affidavits disclose the existence of a triable issue of fact which precludes summary judgment.

The portion of Code of Civil Procedure, section 580b, with which we are concerned reads as follows: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given *to the vendor* to secure payment of the balance of the purchase price of real property, *or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser."* (Original italics.)

In the case at bench the security for plaintiffs' note consisted of commercial property. Defendants never lived in or occupied any of the units of the property which is the subject matter here concerned. Consequently, we are called upon to decide whether the 1965 trust deed given to plaintiffs was given to them in the capacity of a third party lender or in the capacity of a vendor. Plaintiffs' argument that defendants were not "the residential, non-commercial purchasers to whom the Legislature intended to afford the protection of Code of Civil Procedure, 580(b)" ignores the fact that plaintiffs are not entitled to recovery if the 1965 note and deed of trust held by them were "given to the vendor to secure payment of the balance of the purchase price of real property." The 1963 amendment narrowed the statutory prohibition against deficiencies only insofar as *third party lenders* may now recover deficiencies from non-residential purchasers. (See John R. Hetland, *Real Property and Real Property Security: The Well-Being of the Law,* 53 Cal.L.Rev. 151, 164.)

Plaintiffs admit in their affidavits and points and authorities filed in support of their motion for summary judgment that the 1961 note taken by them in connection with the sale to the Rodens was secured by a purchase money deed of trust. Hence they could not have obtained a deficiency judgment under the 1961 note. (*Bargioni* v. *Hill,* 59 Cal.2d 121 [28

Cal.Rptr. 321, 378 P.2d 593] ; *Brown* v. *Jensen,* 41 Cal.2d 193 [259 P.2d 425].)

Since a person buying property that is encumbered by a prior purchase money security device retains the 580b protection of the original mortgagor or trustor notwithstanding an express assumption of the indebtedness (*Stockton Sav. & Loan Bank* v. *Massanet,* 18 Cal.2d 200 [114 P.2d 592] ; *Weaver* v. *Bay,* 216 Cal.App.2d 559 [31 Cal.Rptr. 211] ; *Dail* v. *Campbell,* 191 Cal.App.2d 416 [12 Cal.Rptr. 739] ; cf. *Everts* v. *Matteson,* 21 Cal.2d 437 [132 P.2d 476]), the question is raised as to whether a different rule should pertain merely because defendants gave plaintiffs a new note and trust deed rather than assuming the existing note and trust deed.

In *Lucky Investments, Inc.* v. *Adams,* 183 Cal.App.2d 462 [7 Cal.Rptr. 57], the court held that the notes sued upon ''were ones for the purchase price of real property'' even though they had been taken in exchange for the original notes which had been cancelled. The court explained its holding as follows: ''It stands undisputed in the record that the first notes she [defendant] gave to Lucky [plaintiff] were purchase money notes. It stands equally undisputed that when she [defendant] gave the notes being here sued upon, at the time the holding agreements were executed, the old notes were cancelled and delivered up to Adams [defendant] and the new notes were given for the amount which she [defendant] still owed upon the old notes. Under these circumstances we must conclude that the new notes were mere counterparts of the old, and that the nature of the debts for which they stood remained unchanged.'' (at. p. 466; see also *Syrek* v. *Gould,* 244 Cal.App.2d 149 [52 Cal.Rptr. 827].)

The fact that the notes and trust deeds given in exchange in *Lucky Investments* and *Syrek* were executed by the original purchasers while the 1965 note and trust deed herein were executed by defendants rather than by the Rodens does not compel a different legal result. The fallacy of such a legal distinction is demonstrated by the fact that had the Rodens given a new note and trust deed and *then* transferred the property to defendants subject thereto, plaintiffs clearly could not recover a deficiency from defendants, whether or not defendants had assumed payment of the new notes.

In *Stockton Sav. & Loan Bank* v. *Massanet, supra,* 18 Cal.2d 200, a Mrs. Gleason acquired the property in dispute from a Mr. Soler. At the time Mrs. Gleason acquired the

property, she discharged an existing encumbrance on the property by obtaining a loan from plaintiff secured by a deed of trust on the property. After holding the property for sometime, Mrs. Gleason defaulted in her obligations under the note and trust deed. An arrangement was made whereby she conveyed the property to plaintiff in return for which plaintiff released her from liability under the original note and trust deed. As a part of the same transaction, plaintiff conveyed the property to defendants, who gave plaintiff the note and trust deed involved in the deficiency action, which were for the same sum as the balance due on the Gleason note. In connection with this transaction, the defendants had also given Mrs. Gleason a lease on the property and a note secured by a second trust deed on the property. Under these facts, the Supreme Court held that the trust deed given by defendants to plaintiff was a purchase money deed of trust, therefore, plaintiff could not recover a deficiency judgment. The court reached this result despite the fact that the net effect of the transaction was a transfer of the legal interest in the property from Gleason to defendants. The court recognized that the new note and trust deed given by defendants were taken as "a necessary part of the purchase price" even if it were assumed that Gleason, not plaintiff, was the vendor of the legal interest of the property. "Even if it be accepted that Gleason and not plaintiff was the vendor of the property, the fact remains that the trust deed and note were not merely a renewal or continuation of the note and trust deed owed by Gleason because the latter was released and eliminated when Gleason conveyed to plaintiff and the plaintiff released Gleason from liability thereunder. Plaintiff released one debtor (Gleason) and acquired another (defendants). Although no money was in fact advanced by plaintiff to defendants under the note and trust deed, plaintiff did accept defendants as its debtors and extended credit to them in return for which it was made possible for defendants to purchase the property. The sum represented by the note and trust deed was a necessary part of the purchase price." (18 Cal.2d at p. 208.)

When the 1965 transaction involved herein is analyzed it is clear that, even though the Rodens were the legal owners of the property, plaintiffs also were necessary parties in the transfer of the property to defendants and that, by consenting to, and participating in the sale of the property to defendants, plaintiffs were *vendors* of their interest as beneficiaries under the original trust deed. Moreover, it is clear that

the 1965 note and trust deed were given by defendants to plaintiffs as "a necessary part of the purchase price of the property." For these reasons we must conclude that plaintiffs were *vendors* with respect to the 1965 purchase which brings the 1965 note and trust deed within provisions of section 580b as amended.

We recognize the manifest inequity of disallowing the *typical* junior purchase money lender from recovering a personal judgment against the borrower after a senior lienholder has exhausted the security by the sale under the senior lien. (See Hetland, *supra,* 53 Cal.L.Rev., pp. 160-161.) However, as stated in *Younker* v. *Reseda Manor,* 255 Cal.App.2d 431, 438 [63 Cal.Rptr. 197], "But the Supreme Court has not overruled *Brown* v. *Jensen.* It stands as the expression of law on this subject." Under the compulsion of *Brown* v. *Jensen, supra,* 41 Cal.2d 193, we must reverse the judgment.

Judgment reversed.

Tamura, J., and Gabbert, J. pro tem.,* concurred.

A petition for a rehearing was denied May 13, 1969.

*Assigned by the Chairman of the Judicial Council.