[No. A054905. First Dist., Div. Five. Jan. 26, 1993.]

DELTA COSTANZO, Plaintiff and Respondent, v.
ARUP K. GANGULY et al., Defendants and Appellants.

1086

## COUNSEL

Craig J. Bassett, Miller, Starr & Regalia and Harry D. Miller for Defendants and Appellants.

Wendel, Rosen, Black, Dean & Levitan, David Goldman and Gillian M. Ross for Plaintiff and Respondent.

## OPINION

**HANING, Acting P. J.**—Appellants in this action, the former owners of a 44-unit apartment complex, appeal from a judgment awarding respondent Delta Costanzo the balance due on 11 promissory notes appellants had issued. Appellants claim respondent was barred from recovering a judgment against them by the antideficiency provisions of Code of Civil Procedure section 580b.[1] We agree and will reverse the decision of the trial court.

### FACTS AND PROCEDURAL BACKGROUND

In 1977 respondent acquired a 44-unit apartment complex located in Union City, consisting of 11 buildings containing 4 units each. At the time of respondent's acquisition the property was subject to a deed of trust securing a note to Fidelity Savings for approximately $400,000.

In August 1978 respondent sold the property to Mr. and Mrs. Edwin Carter for $1,250,000. She received $350,000 of this amount in cash, with the balance represented by a "wrap-around" or all-inclusive promissory note in the sum of $900,000 which was secured by a second deed of trust.

Subsequently, Mr. and Mrs. Carter partially conveyed the property and, after a series of transactions, title was held by Mr. Carter and another

---

[1]Unless otherwise indicated, all further section references will be to the Code of Civil Procedure.

individual, Stephen Miller (hereafter Carter/Miller). In 1981 Carter/Miller sold the property to the "Alvarado-Niles 4-Plex Group" (4-Plex), a limited partnership, for $2,017,177. Part of the sales price was paid in cash, with the remainder represented by an all-inclusive $1,847,500 promissory note secured by a third deed of trust which encompassed the existing first and second liens.

4-Plex failed to make the payments required under the note to Carter/Miller, and in October 1981 Carter/Miller initiated foreclosure proceedings. In response, 4-Plex filed for bankruptcy. Carter/Miller tried to obtain relief from the automatic stay so their foreclosure could proceed, but were unsuccessful, so they pursued another avenue of relief. A potential buyer, Thomas Tomanek, was obtained, and Carter/Miller, Tomanek and 4-Plex negotiated a transaction which was submitted to the bankruptcy court and approved in September 1983. Tomanek purchased the property for $2,250,000. Of this amount, $1,850,000 was paid in cash with the remaining $400,000 represented by 11 promissory notes payable to Carter/Miller in the amount of $36,363.63 each. The notes were secured by 11 deeds of trust—one on each building in the complex. Carter/Miller received the majority of the cash ($1,750,000), but were obligated to discharge all liens senior to their lien. 4-Plex received a smaller amount of cash (approximately $100,000), the majority of which was used to pay the costs of sale. In order to accommodate the sale, Carter/Miller discounted their secured claim by slightly over $37,500.

The funds for Tomanek's purchase came from World Savings, which loaned a total of $2,019,600 represented by 11 promissory notes secured by a first lien on each of the 11 buildings. Tomanek put no money into the transaction over and above the borrowed funds, and received over $116,000 at the close of escrow.

Respondent was told by her accountant that she would suffer adverse tax consequences if her note was paid, so she asked that the deal be restructured. The parties agreed and instead of having her note paid, respondent exchanged it for approximately $124,000 in cash and an assignment of the 11 promissory notes Tomanek had issued in favor of Carter/Miller. The deeds of trust securing these notes were junior to the liens securing the World Savings notes.

In June 1984 Tomanek sold the property to appellants Arup K. Ganguly, Dolly Ganguly, Imdad H. Khan and Sitara A. Khan, for $2,681,600. Appellants paid approximately $250,000 of this amount in cash and assumed the loans to World Savings. As originally structured, appellants were also to

assume the obligation to pay the notes respondent held as assignee. However, appellants ultimately executed 11 new notes and deeds of trust naming respondent as beneficiary, thereby replacing the existing 11 notes and deeds of trust. The new notes mirrored the previous notes except that the principal amount was less because the underlying obligation had been paid down over time.

Appellants were unable to operate the property profitably, and in August 1986 they defaulted on their obligations to World Savings. World Savings then foreclosed on its deeds of trust and purchased the property, extinguishing respondent's liens.

Respondent then filed an action against appellants seeking to recover the balance due on her promissory notes. Appellants defended the action on the ground that respondent was barred from recovering a judgment against them by the antideficiency provisions of section 580b. Through a series of motions for summary adjudication the trial court concluded section 580b did not apply, and entered judgment in favor of respondent. This appeal followed.

### Discussion

The issue in this case is whether respondent was prohibited from obtaining a deficiency judgment against appellants by section 580b. That section states, in part: "No deficiency judgment shall lie in any event after a sale of real property . . . for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . . ." Section 580b has consistently been interpreted to prohibit the vendor in a real property transaction from obtaining a deficiency judgment against a purchaser under a deed of trust given to the vendor to secure the balance of the purchase price. (*Brown* v. *Jensen* (1953) 41 Cal.2d 193, 198 [259 P.2d 425]; *Spangler* v. *Memel* (1972) 7 Cal.3d 603, 609 [102 Cal.Rptr. 807, 498 P.2d 1055]; *Thompson* v. *Allert* (1991) 233 Cal.App.3d 1462, 1464 [285 Cal.Rptr. 367].)

Appellants claim the 11 promissory notes respondent holds must be considered purchase money debts which are subject to the limitations of section 580b. Their argument is based on a three-step analysis. Appellants claim the 11 notes issued by Tomanek in favor of Carter/Miller when Tomanek purchased the property were purchase money debts which were subject to section 580b. Appellants further maintain the purchase money character of those notes continued when they were assigned from

Carter/Miller to respondent, and also applied to the replacement notes appellants issued when they purchased the property. Accordingly, appellants claim the notes respondent now holds are purchase money debts which were subject to section 580b.

The latter two steps of this analysis are well supported by the case law. ■ As a general rule, the character of an obligation as a purchase money debt is determined by the facts and circumstances which exist at the time it is created, and it retains that character during subsequent transactions. (*Brown* v. *Jensen, supra,* 41 Cal.2d at p. 197.) The courts have held that when a purchase money obligation is assigned, the assignee is also subject to the limitations of section 580b. (*Clayton Development Co.* v. *Falvey* (1988) 206 Cal.App.3d 438, 444 [253 Cal.Rptr. 609].) The courts have further held that the purchase money character of an obligation is not changed simply because new notes on substantially similar terms have been exchanged for old notes even if, as here, a new maker is substituted. (*Jackson* v. *Taylor* (1969) 272 Cal.App.2d 1, 5-6 [76 Cal.Rptr. 891].) ■ Thus, the validity of appellants' argument depends upon the first step of their analysis, i.e., whether the notes issued by Tomanek in favor of Carter/Miller can be considered purchase money debts which are subject to section 580b.

The initial hurdle facing appellants is that the Tomanek notes were not created as part of a sale of property from Carter/Miller to Tomanek. Carter/Miller did not own the property when the notes were created, 4-Plex did. Nonetheless, numerous cases have held that the term "vendor" in section 580b must be construed liberally, and that a lien holder who participates in a sales transaction and agrees to extend his loan to a new purchaser in an attempt to protect his security interest may be considered a "vendor" within the meaning of the statute. For example, in *Jackson* v. *Taylor, supra,* 272 Cal.App.2d 1, the plaintiffs held a purchase money note secured by a junior lien on two parcels of property. After the note was in default, the owner agreed to sell the property to new buyers, but to do so new financing was necessary. The plaintiffs agreed to reconvey their deed of trust in exchange for some cash and a new note secured by a new junior lien. After the senior lien holder foreclosed and extinguished the plaintiffs' junior lien, plaintiffs sued for a deficiency judgment. The court held this was improper because their note was subject to section 580b. Even though they were not the owners of the property when the note was created, they were necessary parties to the transfer to the new purchasers, and by consenting to and participating in the sale they "were *vendors* of their interest as beneficiaries under the original trust deed." (272 Cal.App.2d at p. 6.)

Similarly, in *Shepherd* v. *Robinson* (1981) 128 Cal.App.3d 615 [180 Cal.Rptr. 342], the plaintiffs held a secured purchase money lien. The owner

of the property was suffering financial problems and decided to sell it, but had to obtain new financing to do so. To facilitate the sale, the plaintiffs agreed to reduce the debt owed to them and to subordinate their lien to a new senior lien. Although the plaintiffs were not the sellers of the property, the court held they were necessary parties to the transfer, and by consenting to and participating in the sale they were "vendors" of their interest as beneficiaries under the original trust deed, and thus must be considered "vendors" for purposes of section 580b. (128 Cal.App.3d at p. 623; see also *LaForgia* v. *Kolsky* (1987) 196 Cal.App.3d 1103, 1112 [242 Cal.Rptr. 282].)[2]

In this instance, Carter/Miller were necessary for the sale to Tomanek. They agreed to compromise their claim and take notes secured by junior liens in order to facilitate the sale. Carter/Miller's motivation for engaging in this process was clear. A direct sale from 4-Plex to Tomanek, even when premised upon a compromise of their claim, was preferable to the uncertainty and expense required to obtain relief from the automatic stay, complete the foreclosure proceedings, and then negotiate and sell to Tomanek. Since Carter/Miller actively participated in the sale and their participation was necessary to its consummation, they were "vendors" within the meaning of section 580b.

However, the mere fact that Carter/Miller may be considered "vendors" does not mean that Tomanek, and by chain of reasoning, appellants, are entitled to antideficiency protection. ▇▇▇ Our Supreme Court has stated that section 580b applies automatically only to "standard" purchase money transactions (*Spangler* v. *Memel, supra,* 7 Cal.3d at p. 611), i.e., where the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 41 [27 Cal.Rptr. 873, 378 P.2d 97].) ▇▇▇ Where the transaction is a variation of the standard purchase money mortgage transaction, the antideficiency statute applies only when doing so will promote the purposes underlying section 580b. (*Spangler* v. *Memel, supra,* at p. 611.) The transaction here is clearly a variation of the standard transaction because Carter/ Miller were not vendors of real property, but vendors of their interest as beneficiaries under a trust deed. Accordingly, it must be determined whether the purposes underlying section 580b would be advanced if it were applied in this case.

The primary purpose of the antideficiency statute is to prevent the overvaluation of land by placing the risk of inadequate security on the purchase

---

[2]Respondent claims these cases were wrongly decided and overlooked binding contrary authority in *Kistler* v. *Vasi* (1969) 71 Cal.2d 261 [78 Cal.Rptr. 170, 455 P.2d 106]. However, the issue in that case was whether section 580b applied to a note given to a broker in lieu of a commission, not whether a person who compromises a prior lien to facilitate a sale can be considered a vendor. (71 Cal.2d at pp. 262-263.) *Kistler* is inapplicable to the present case.

money mortgagee. By allocating the risk in this manner, precarious land schemes are discouraged. (*Spangler* v. *Memel, supra,* 7 Cal.3d at p. 612.) Here, it is apparent that Carter/Miller were overvaluing the property. World Savings' first liens (totaling $2,019,600), together with Carter/Miller's junior liens (totaling $400,000) far exceeded the price paid by Tomanek ($2,250,000). This fact alone (a loan-to-value ratio of approximately 107 percent) suggests overvaluation. This conclusion is buttressed because the World Savings notes carried a variable interest rate with negative amortization in the first three years. Every month those loans were increasing, not decreasing; thus Carter/Miller's notes were in a tenuous position from the start. This conclusion is also supported by the case law. In *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, our Supreme Court stated that a purchaser's inability to obtain the purchase price from a lender using the land as security should warn the vendor that he is overvaluing the property. If the vendor then insists on his premium purchase price secured by a second trust deed, he does so at his peril subject to the limitations of section 580b. (59 Cal.2d at p. 42; see also *Spangler* v. *Memel, supra,* at p. 612.) Here, Tomanek's inability to obtain financing from World Savings in an amount closer to the purchase price should have warned Carter/Miller that they were overvaluing the property. Having failed to heed that warning, Carter/Miller should be subject to section 580b.

In light of the foregoing, we conclude that the 11 notes issued by Tomanek in favor of Carter/Miller were purchase money debts which are subject to section 580b. Accordingly, the notes respondent holds are also purchase money debts which are subject to the limitations of that section.

We do not believe this result is unnecessarily harsh. Respondent was given the opportunity to be free of the property (and the antideficiency rules) when the property was sold from 4-Plex to Tomanek out of the bankruptcy. The transaction was originally structured so that respondent's initial purchase money note would be paid off. However, for tax reasons, respondent elected to take an assignment of the Carter/Miller notes. Requiring respondent to stand in the shoes of Carter/Miller is entirely appropriate.

Given our holding, we need not extensively address the remaining issue discussed by the parties—whether the purchase money character of the lien respondent obtained when she sold the property to Carter in 1978, or the lien Carter/Miller received when they sold the property to 4-Plex in 1981, can be traced into the liens respondent currently holds, or whether, as respondent argues, the sale from the bankruptcy cut off the purchase money character of those liens. As we discussed in great detail above, appellant is subject to section 580b to the same extent as were Carter/Miller, and Carter/Miller are

subject to the antideficiency statute because they were "vendors" of their interest as beneficiaries under a note and deed of trust. Respondent has not cited, nor are we aware of, any statute or case holding that notes and deeds of trust created during a bankruptcy sale are somehow exempt from the limitations of section 580b. Indeed, the rule appears to be to the contrary. (See *LaForgia* v. *Kolsky, supra,* 196 Cal.App.3d 1103 [court held that a nonpurchase money secured obligation held prior to a bankruptcy became a purchase money obligation upon the bankruptcy sale].)

### DISPOSITION

The judgment is reversed.

King, J., and Strankman, J.,* concurred.

A petition for a rehearing was denied February 18, 1993, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 13, 1993. Kennard, J., was of the opinion that the petition should be granted.

---

*Presiding Justice of the Court of Appeal, First District, Division One, sitting under assignment by the Chairperson of the Judicial Council.