856 P.2d 1188

**TRANSAMERICA FINANCIAL SERVICES, INC., Plaintiff–Appellee,**

v.

**Carl LAFFERTY, an unmarried man, Defendant–Appellant.**

No. 1 CA–CV 91–0173.

Court of Appeals of Arizona, Division 1, Department A.

July 20, 1993.

Robert D. McCoy, Wickenburg, for plaintiff-appellee.

Crosby and Gladner, P.C. by G. Lee Crosby, Larry K. Udall and S. Matt Collins, Phoenix, for defendant-appellant.

Newman, Ahern, Chambliss & Banen by Lisa Perry Banen, Phoenix, for amicus curiae AZ Trustee Ass'n.

## OPINION

JACOBSON, Judge.

This appeal presents two major issues: (1) whether the trustee of a real estate trust is required to take steps to give notice of a trustee's sale to a second beneficiary, beyond sending notice to the address of that beneficiary as reflected in the deed of trust; and (2) if the sale is valid as to the second beneficiary, whether that beneficiary's lien revived when the original debtor reacquires the property, and, if so, whether that lien acquired preference to other liens on the property.

## FACTS AND PROCEDURAL HISTORY

In 1972, Robert and Rosalinda Guerrero ("the Guerreros") executed a deed of trust covering a parcel of real property in Phoenix, and recorded it with the Maricopa County Recorder. In 1987, the Guerreros executed a second deed of trust on the same property, in which appellee Transamerica Financial Services, Inc. ("Transamerica") was the beneficiary.

The body of Transamerica's 1987 deed of trust contained the following:

BENEFICIARY:

TRANSAMERICA FINANCIAL SERVICES, INC.

ADDRESS:  4025 S. McClintock

CITY:  Tempe, AZ. 85282

Additionally, the upper left corner of the deed of trust stated:

WHEN RECORDED MAIL TO:

Transamerica Financial

P.O. Box 2L

Tempe, AZ. 85282

On September 19, 1989, Transamerica relocated its Tempe office to 1400 East Southern, Suite 925. Transamerica did not record a request for notice reflecting its new address as permitted by A.R.S. § 33-809(A). It continued to receive mail at the post office box indicated in the upper left corner of the deed of trust.

Defendant Mickey Magness ("Magness"), not a party to this appeal, was the trustee under the first deed of trust. On October 11, 1989, she caused copies of a notice of trustee's sale and notice of breach to be mailed to Transamerica at 4025 S. McClintock in Tempe, the address reflected for "Beneficiary" in the second deed of trust. One copy was sent by certified mail with return receipt requested and another by first class mail. Transamerica has no record of receiving either mailing. The envelopes, including the return receipt attached to the certified mailing, were returned to Magness's office by the U.S. Postal Service. The certified envelope was marked: "RETURN TO SENDER/NO FORWARD ORDER ON FILE/UNABLE TO FORWARD." Magness made no further effort to contact Transamerica.

A trustee's sale under the first deed of trust was conducted on January 10, 1990. Appellant Carl Lafferty ("Lafferty") was the highest bidder at the sum of $12,500.00. Lafferty received a trustee's deed, which was recorded on January 23, 1990.

Lafferty's business partner contacted the Guerreros after the sale, and the Guerreros and Lafferty agreed that the Guerreros would buy the property back. Lafferty executed a joint tenancy deed to the Guerreros on January 24, 1990, and the Guerreros executed two deeds of trust in favor of Lafferty for $15,000.00 and $13,000.00, respectively, on the same day. The joint tenancy deed and the two deeds of trust were recorded sequentially on January 25, 1990. According to Lafferty's uncontested affidavit, he was not acquainted with the Guerreros and had not met them before the trustee's sale.

Transamerica brought this action for declaratory relief against Lafferty, the Guerreros, and Magness. Lafferty counterclaimed for a decree of quiet title. On cross-motions for summary judgment, the trial court ruled in pertinent part:

If notice had been sent subsequently or even originally to the P.O. Box 2L, Tempe address notice would have been

received as Transamerica has maintained such an address throughout such a period of time.

It is basically the position of [Lafferty] that having sent notice to the address at 4025 South McClintock that was all that [Magness] had to do, and when the notice was not received, it was simply too bad for [Transamerica]. . . .

\* \* \* \* \* \*

In our case [Magness] had actual knowledge of an address for [Transamerica] (from the post office address shown on the face of the document) as well as a duty to inquire concerning the whereabouts of [Transamerica]. Any such inquiry would quickly have shown that Transamerica maintained an office a few blocks from the McClintock address, had a telephone number in operation, and was qualified to do business in Arizona, with a statutory agent on file with the Arizona Corporation Commission.

Even the most cursory examination of a Phoenix telephone book, which would take no more than fifteen seconds, would have revealed to [Magness] that [Transamerica] then and now maintained at least nine different offices in the metropolitan Phoenix area. To fail to make such an effort as to a nationally known company is, in the Court's opinion, a gross error.

Based on all of the above, the Court must conclude that proper notice was not given, the foreclosure was void as to [Transamerica] and that its lien remains as a first lien on the property.

The trial court entered an amended judgment determining that Transamerica's interest "was not affected by the trustee's sale of January 10, 1990." Lafferty and Magness moved unsuccessfully for a new trial.

Lafferty timely appealed from the amended judgment and the order denying the motion for new trial. This court has

jurisdiction pursuant to A.R.S. § 12–2101(B) and (F)(1).

## DISCUSSION

### A. *Sufficiency of Notice Under A.R.S. § 33–809(B)(2)*

Under A.R.S. § 33–808, a trustee who, after default under a deed of trust, wishes to exercise the power of sale granted by A.R.S. § 33–807, is required to record and post a notice of trustee's sale. Furthermore, A.R.S. § 33–809(B)(2) requires the trustee to give notice of the proposed sale, by certified or registered mail:

> To each person who, at the time of recording of the notice of sale, appears on the records of the county recorder in the county in which any part of the trust property is situated to have an interest in any of the trust property. *Such copy of the notice shall be addressed to the person whose interest so appears at the address set forth in the document. If no address for the person is set forth in the document, the copy of the notice may be addressed in care of the person to whom the recorded document evidencing such interest was directed to be mailed at the time of its recording or to any other address of the person known or ascertained by the trustee.* If the interest which appears on the records of the county recorder is a deed of trust, a copy of the notice need only be mailed to the beneficiary under the deed of trust. If any person having such an interest or the trustor, or any person who has recorded a request for notice, desires to change the address to which notice shall be mailed, *such change shall be accomplished by a request as provided under this section.*[1]

(Emphasis added.)

In addition to the notice of sale required by A.R.S. § 33–809(B)(2), the trustee is also compelled by subsection C to mail a statement of breach of the trust deed and elec-

---

1. A.R.S. § 33–809(A) provides that such a request can be made by recording a request form in the office of the county recorder.

tion of sale. A.R.S. § 33–809(C) provides in part:

A copy of such additional notice shall also be sent with the notice provided for in subsection B, paragraph 2 to all persons whose interest in the trust property is subordinate in priority to that of the deed of trust along with a written statement that the interest may be subject to being terminated by the trustee's sale. The written statement may be contained in the statement of breach or nonperformance.

Lafferty contends that because Magness complied with A.R.S. § 33–809(B)(2) by sending notice to the address contained in the body of Transamerica's second deed of trust, the resulting sale of the property pursuant to that notice was valid. *Amicus curiae* Arizona Trustee Association supports this view.[2] Transamerica, on the other hand, although not embracing the extensive duty to search for the whereabouts of inferior lien holders espoused by the trial court, argues that, under A.R.S. § 33–809(B)(2), once the notice to a beneficiary is returned undelivered, it is as if "no address for the person is set forth in the document" and, therefore, Magness was required to send additional notice to "any other address of the person known or ascertained by the trustee." Because Transamerica's post office box address was clearly set forth in the left-hand corner of the deed of trust itself, Transamerica argues that the address could have been ascertained, and the failure to send notice of the sale to that address invalidated the subsequent trustee's sale.

This issue is one of statutory construction. Helping in this resolution is the history of this statute. The notice requirement of A.R.S. § 33–809(B)(2) was amended in 1984. The prior version of the statute provided in part:

Such copy of the notice shall be addressed to the person whose interest so appears *at the address and in care of the person to whom the recorded document evidencing such interest was directed to be mailed at the time of its recording.*

(Emphasis added.)

The 1984 amendment changed the notice requirement in two significant aspects. First, it provided that notice be sent to "the address set forth in the document." Second, it provided that "if no address is set forth in the document," then notice should be sent in the manner provided by the prior statute, i.e., "in care of the person to whom the recorded document evidencing such interest was directed to be mailed at the time of its recording." Further, it placed an affirmative duty on a person having an interest in the property who "desires to change the address to which notice shall be mailed" to record a request for such a change with the county recorder.

These changes indicate that the legislature intended to ensure that the actual person or entity having an interest in the property received notice of the trustee's sale and of the breach. The legislature apparently was aware that, under the prior statute, sending notice to the recording party might or might not give notice to the actual person having an interest in the property because the recording could be made by the lawyers handling the transaction, an escrow agent having no interest in the property, or by a professional recording service. In order to avoid this potential problem, under the amended statute persons having an interest in the property were required to set forth an address in the document and to update that address in a specific manner if it changed. According to the amended statute, it is only when "no address" is set forth in the document that the trustee is required to look elsewhere.

We reject Transamerica's argument that the amended statute should be interpreted

**2.** In addition, Arizona Trustee Association argues that A.R.S. § 33–811(A), which gives a conclusive presumption to compliance with notice requirements by the issuance of a trustee's deed, also supports the validity of the underlying sale. *See Main I Limited Partnership v. Venture Capi-* *tal Constr. & Dev. Corp.,* 154 Ariz. 256, 260, 741 P.2d 1234, 1238 (App.1987). Because Lafferty has not argued this statute and we resolve the matter on the notice requirements of A.R.S. § 33–809, we do not address the applicability of A.R.S. § 33–811 to this situation.

as converting a "return to sender" notification by the post office to the equivalent of a "no address." This issue was addressed in the California case of *I.E. Associates v. Safeco Title Insurance Co.*, 39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596 (1985). In that case, the trustee sent notice of foreclosure to the last known address of the trustor shown in the deed of trust, but it was returned "address unknown." *Id.* 216 Cal.Rptr. at 439, 702 P.2d at 597. In the subsequent suit by the trustor to set aside the foreclosure sale, the California Supreme Court observed:

> [T]here is no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes. There are, moreover, persuasive policy reasons which militate against a judicial expansion of those duties. The nonjudicial foreclosure statutes—an alternative to judicial foreclosure—reflect a carefully crafted balancing of the interests of beneficiaries, trustors, and trustees. Beneficiaries, of course, want quick and inexpensive recovery of amounts due under promissory notes in default. Trustors, on the other hand, need protection against the forfeiture of valuable property rights. Trustees, the middlemen, need to have clearly defined responsibilities to enable them to discharge their duties efficiently and to avoid embroiling the parties in time-consuming and costly litigation. In taking all of these concerns into account, the statutes strike an overall balance favoring the protection of trustors.
>
> The Legislature's decision not to require the trustee to search for the trustor's current address, but to compel him to use it if it is actually known, is consistent with this careful balancing of competing interests to maintain the overall working of the system under which a trustor should normally receive actual notice. The beneficiary ordinarily would know if the trustor has moved, and the statute requires him to notify the trustee of any new address he knows. The efficacy of the system supports striking the

balance in favor of requiring the trustor to keep the beneficiary and trustee informed of his current address. It is a simple task for the trustor, whereas imposing on the trustee a duty of taking reasonable steps to discover the trustor's current address, would bring far more cost and uncertainty into the system. Litigation would be likely any time a person failed to receive actual notice since one could always argue that the steps taken were insufficient.

*Id.* 216 Cal.Rptr. at 442–43, 702 P.2d at 600–01 (citations and footnotes omitted).

■ We agree with the reasoning of *I.E. Associates.* Clearly, the legislature put the burden on "persons having an interest" in the property to properly advise those parties required to give notice of their current address. A judicial expansion of the duty of the trustee to search out any other address would be inconsistent with this legislative burden and would foster unnecessary litigation.

We therefore hold that Magness as the trustee under the first deed of trust, having sent notice to Transamerica at the address it provided in the body of the second deed of trust, complied with the statutory obligations, and the resulting sale was valid and thus extinguished Transamerica's second beneficiary position.

### B. *Revival of Transamerica's Lien*

■ Transamerica argues that even if the sale of the Guerreros' property was valid and its junior lien was extinguished by that sale, the reacquisition of the property by the Guerreros, the trustors, revived its lien under A.R.S. § 33–806(A). That statute provides in part:

> An interest in the trust property acquired by the trustor subsequent to the execution of the trust deed shall inure to the trustee as security for the contract or contracts for which the trust property is conveyed as if the interest or claim had been acquired before execution of the trust deed.

According to Transamerica, this statute not only revives its lien, but also places that lien in a superior position to Lafferty's

purchase money interests. Lafferty argues that A.R.S. § 33–806(A) was intended to apply to situations in which a purchaser of property grants a deed of trust shortly before acquiring title to the property, and was not intended to revive liens extinguished by foreclosure sale. Although this may be true, the literal terms of the statute are not so restrictive. The Guerreros, as trustors under Transamerica's 1987 deed of trust, bought the property from Lafferty after the trustee's sale. Thus, they acquired an interest in the trust property subsequent to the execution of the 1987 trust deed. *See* A.R.S. § 33–806(A). Pursuant to this statute, that interest "inure[d] to the trustee as security for the contract." [3]

Case law from other jurisdictions supports this result. For example, in *Jensen v. Duke*, 71 Cal.App. 210, 234 P. 876 (1925), a California court construed a statute similar to A.R.S. § 33–806(A).[4] In *Jensen*, plaintiff owned property subject to a first deed of trust in favor of Abbott. Plaintiff subsequently sold the property, taking a second mortgage for part of the purchase price. Abbott subsequently foreclosed his lien, extinguishing plaintiff's second mortgage lien. Shortly thereafter, plaintiff's mortgagor reacquired the property, and resold it to a third party. Plaintiff sued to foreclose the second mortgage despite its theoretical extinguishment in the foreclosure of Abbott's first deed of trust. Plaintiff prevailed. After noting that the statute may have been merely intended to codify the common law rule of after-acquired title, the California court stated:

> [P]laintiff's case is within the purview of the statute; and to hold otherwise would involve a strained construction, where every consideration of justice forbids that the mortgagor should hold his title obtained from Abbott free of plaintiff's mortgage lien.

*Id. See also Stone v. Morris*, 177 Ark. 745, 7 S.W.2d 796, 798 (1928) (land sold under first mortgage bought by mortgagee and conveyed to mortgagors who conveyed to others with knowledge held subject to second mortgage); *Barberi v. Rothchild*, 7 Cal.2d 537, 61 P.2d 760, 761 (1936) (applying *Jensen* where trustor's brother purchased property at foreclosure sale and transferred it to trustor after two years); *Sabine v. Leonard*, 322 S.W.2d 831, 835–37 (Mo.1959) (foreclosure of prior lien did not affect statutory covenant between parties to second deed of trust); *Kerr v. Erickson*, 24 S.W.2d 21, 21–22 (Tex.Com.App.1930) (purchaser, giving second mortgage and assuming mortgage later foreclosed, who took title from foreclosure sale purchaser cannot question validity of second mortgage); *cf. Dixieland Realty Co. v. Wysor*, 272 N.C. 172, 158 S.E.2d 7, 14 (1967) (although purchase by trustor at foreclosure sale did not extinguish junior lien, doctrine of marshalling assets not available).

■ We now turn to Transamerica's contention that its revived lien has priority over Lafferty's purchase money liens acquired in the sale of the property to the Guerreros. Transamerica's theory is that the instant the Guerreros obtained title to the property from Lafferty, its lien reattached and, therefore, the Guerreros' giving a lien to Lafferty occurred after they acquired title, and thus the property was subject to Transamerica's lien.

We disagree. The common law rule applicable to purchase money mortgages is equally applicable to Lafferty's purchase money deeds of trust. That rule is:

> "[A] mortgage on land executed by the purchaser of the land contemporaneously with the acquirement of the legal title thereto, or afterwards, but as a part of the same transaction, is a purchase-money mortgage, and entitled to preference as such over all other claims or liens arising through the mortgagor, though they are prior in point of time; and this is true without reference to whether the

---

**3.** Although the Guerreros are not parties on appeal, they were before the trial court where the issue of revival of the Transamerica lien was litigated. Their absence in this appeal, therefore, does not preclude granting Transamerica the relief requested.

**4.** The statute at issue in *Jensen*, Cal.Civ.Code § 2930, provided:

> Title acquired by the mortgagor subsequent to the execution of the mortgage, inures to the mortgagee as security for the debt in the manner as if acquired before execution.

mortgage was executed to the vendor or to a third person. The reason for the rule most frequently given is that, the execution of the deed and mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands, and, without stopping, vests in the mortgagee, and during such instantaneous passage no lien of any character can attach to the title." *Faulkner County Ranch & Trust v. Vail,* 173 Ark. 406, 293 S.W. 40, 41 (1927) (applying doctrine against a mortgage given prior to acquiring title), *quoting* 19 R.C.L. p. 416, art. 196. This common law doctrine of instantaneous seizen as applied to purchase money mortgages has also been sustained on the theory that the purchase money mortgage "is, in effect, a limitation on the title which the mortgagor takes, rather than an encumbrance on the title conveyed...." 59 C.J.S. *Mortgages* § 231, p. 300 (footnote omitted). *See, e.g., Troyer v. Mundy,* 60 F.2d 818, 821 (8th Cir.1932); *Faulkner,* 293 S.W. at 41–42; *Mitchell v. West End Park Co.,* 171 Ga. 878, 156 S.E. 888, 893 (1930); *Wermes v. McCowen,* 286 Ill.App. 381, 3 N.E.2d 720, 722 (1936); *Fecteau v. Fries,* 253 Mich. 51, 234 N.W. 113, 114 (1931).

Here, there is no contention that Lafferty and the Guerreros contrived through the use of the foreclosure sale to fraudulently extinguish Transamerica's lien. Therefore, no obstacle stands in the way of applying the common law equitable rule applicable to purchase money mortgages. We hold that Transamerica's revived lien is subordinate to the liens created by Lafferty's deeds of trust.

### CONCLUSION

Based upon the foregoing, the judgment of the trial court is reversed and the matter remanded with instructions to enter judgment in accordance with this opinion.

CONTRERAS, P.J., and KLEINSCHMIDT, J., concur.