[No. E030072. Fourth Dist., Div. Two. June 10, 2002.]

DMC, INC., Plaintiff and Appellant, v.
DOWNEY SAVINGS AND LOAN ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

Law Offices of Michael G. York and Michael G. York for Plaintiff and Appellant.

Miller, Starr & Regalia and Michael J. Hassen for Defendant and Respondent.

**OPINION**

**GAUT, J.—**

1. *Introduction*

Plaintiff DMC, Inc. (DMC) filed an action for judicial foreclosure and declaratory relief to determine whether its deed of trust had priority over defendant Downey Savings and Loan Association's (Downey) deed of trust. After finding that Downey's purchase-money deed of trust was senior to DMC's lien, the court granted Downey's motion for summary adjudication and entered judgment accordingly.

On appeal, DMC claims that, because Downey failed to present any admissible evidence to establish the character of its lien as a purchase-money deed of trust, the court erred in making this initial finding. DMC alternatively claims that, because both debts were purchase-money deeds of trust and because DMC's lien was recorded first in time, the trial court erred in making its ultimate finding that Downey's lien was senior to DMC's lien.

Even if Downey presented inadequate evidence to establish the purchase-money character of its lien, undisputed facts in the record reveal that the debtor, Sharon Henry, obtained a mortgage loan from Downey to repurchase her home after the original foreclosure proceedings. Moreover, assuming that DMC's lien reattached after the foreclosure, we conclude that the new

purchase-money lien has priority over any revived junior lien. For these reasons, we reject DMC's claims and affirm the judgment.

## 2. *Factual and Procedural History*

The following facts were undisputed.

Sharon Henry owned real property located at 2398 Mountain Avenue in Norco, California. In October of 1996, Henry obtained a loan from Accredited Home Lenders, Inc. (Accredited) secured by a deed of trust against the property. Accredited's deed of trust was recorded on November 21, 1996. Accredited later assigned its deed to Aames Capital Corporation (Aames).

Around the same time, Henry acquired a $105,000 loan, which also was secured by a deed of trust for the same property, from certain designated beneficiaries. This deed of trust was recorded on November 25, 1996. The deed of trust provided that it was "subject and junior to" the one recorded on November 21, 1996. By the time DMC filed its complaint, the beneficiaries had assigned to DMC all of their rights and interest in the junior deed of trust.

In late November of 1996, Henry transferred title to the property to her parents, Benjamin and Ann Finley. In October of 1997, as a result of the owners' default on the first mortgage loan, Aames initiated foreclosure proceedings. During the proceedings, Aames assigned its deed of trust to Aspen Limb, Inc., which completed the foreclosure and eventually acquired title to the property by April of 1999. The foreclosure extinguished DMC's lien.

In June of that year, Henry obtained a loan secured by a new deed of trust from Downey to repurchase the property. Downey's deed was recorded on June 17, 1999.

On April 10, 2000, DMC filed its first amended complaint for declaratory relief and judicial foreclosure. Specifically, in its cause of action for declaratory relief, DMC asked the court to determine (1) whether its second deed of trust attached to the property after the foreclosure and repurchase, and (2) whether its deed of trust was superior to Downey's deed of trust.

In its motion for summary judgment, Downey claimed that, as stated in the 12th affirmative defense in its answer to DMC's complaint, even if DMC's deed of trust reattached to the property, it remained junior to

Downey's new purchase-money deed of trust. The court agreed with Downey and granted the motion for summary adjudication as to this affirmative and complete defense. The court subsequently entered judgment in Downey's favor.

### 3. *Evidentiary Objection*

■■■ DMC claims that Downey submitted inadmissible evidence in support of its motion for summary judgment as to the necessary factual premise that Downey's deed of trust was a purchase-money mortgage. Even if DMC's evidentiary objection had merit, undisputed facts in the record established that Henry executed Downey's promissory note and deed of trust to secure the funds necessary to repurchase the house.

A purchase-money lien is a deed of trust given to a lender to secure repayment of a loan used to pay all or part of the purchase price of an occupied dwelling for not more than four families.[1] The facts and circumstances that exist at the time the debt is created determine the character of the obligation as a purchase-money mortgage.[2]

Based on Downey's undisputed fact No. 14, to which DMC agreed, "[i]n June 1999, Ms. Henry obtained a loan from [Downey] to purchase the [p]roperty" and the loan was "secured by a deed of trust against the [p]roperty in favor of [Downey] . . . ." This fact, and the reasonable inferences drawn therefrom, establishes that Henry used the loan amount for the intended transaction, namely, the repurchase of the Norco property. Any error in the court's evidentiary ruling, therefore, was harmless.[3]

Nevertheless, in its reply brief, DMC argues that Downey failed to provide evidence to prove the other requirements of a purchase money mortgage, including that the loan was given to purchase property containing four or fewer units and that the property would be occupied by the mortgagor/borrower. Such facts are easily verifiable. Indeed, the documents submitted in support of Downey's motion for summary judgment included a standard loan agreement for a single-family residence and a deed of trust with a condition requiring the borrower's occupancy. Moreover, throughout

---

[1]Civil Code section 2898, subdivision (a); Code of Civil Procedure section 580b; see also 4 Miller & Starr, California Real Estate (3d ed. 2000) Deeds of Trust, section 10:236, page 748 (hereafter Miller & Starr).

[2]*Costanzo v. Ganguly* (1993) 12 Cal.App.4th 1085, 1090 [16 Cal.Rptr.2d 55].

[3]California Constitution, article VI, section 13; *Jordan v. Department of Motor Vehicles* (1999) 75 Cal.App.4th 449, 470 [89 Cal.Rptr.2d 333].

the proceedings below, DMC did not challenge the purchase-money character of Downey's deed based on these additional requirements. We therefore reject DMC's late efforts to raise a new factual dispute.[4]

### 4. *Priority*

In its motion for summary judgment or, in the alternative, summary adjudication, Downey claimed that, even assuming DMC's lien reattached upon Henry's repurchase of the property, the lien remained junior to Downey's purchase-money deed of trust. DMC responded that its lien, which it claims was both first in time and also a purchase-money deed of trust, was superior to Downey's later-recorded lien. At the hearing on Downey's motion, the trial court found that: "As a matter of law, a previously wiped out lien reattaches to the property junior to the purchase-money mortgage, without which the funds to reacquire the property would not exist and, accordingly, the wiped out lien would not reattach." By finding that Downey's deed had lien priority, the court granted the motion for summary adjudication.

In reviewing the trial court's decision to grant summary judgment or summary adjudication, we exercise our independent judgment to determine whether Downey has established undisputed facts to state a complete defense,[5] thereby justifying the court's award of judgment as a matter of law.[6]

The issue in this case, assuming that the original owner's repurchase of the property after a nonjudicial foreclosure revives the previously-extinguished junior lien, is whether the new purchase-money deed of trust has lien priority over the revived junior lien. This court and the parties have not found any California cases addressing this specific issue. Nevertheless, we begin our analysis with well-established rules governing lien priority.

In California, lien priority is determined by the "first in time, first in right" approach.[7] In regards to real property, liens that are recorded first

---

[4]See *Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236 1249 [100 Cal.Rptr.2d 403]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, footnote 3 [72 Cal.Rptr.2d 232].

[5]Code of Civil Procedure section 437c, subdivision (o)(2); *Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].

[6]See Code of Civil Procedure section 437c, subdivision (c); *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].

[7]Civil Code section 2897; *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1099 [95 Cal.Rptr.2d 779].

have priority over any later-recorded liens.[8] The explicit caveat in applying the "first in time, first in right" rule, however, is that all other things must be equal.[9]

Different types of liens are not on equal footing.[10] A purchase-money mortgage, for example, has priority over all other liens on real property.[11] Civil Code section 2898, subdivision (a) provides: "A mortgage or deed of trust given for the price of real property, at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording laws." The character of the obligation as a purchase-money debt, once determined by the facts that exist at the time of its creation, retains that character after subsequent transactions.[12] "[T]he purchase money character of an obligation is not changed simply because new notes on substantially similar terms have been exchanged for old notes . . . ."[13]

 In this case, application of these general rules does not resolve the question of lien priority. DMC claims that, even after its lien was extinguished by the foreclosure and then revived by the original owner's repurchase of the property, its purchase-money deed was superior to Downey's later-recorded purchase-money deed. DMC fails to cite any authority to support this specific claim. However, cases from other states, as consistent with other principles governing lien priority in this state, suggest a different result.

One such case is a 1921 opinion from a New York lower court. In *Duer v. Jaeger*,[14] Albert Firth Realty Company (Company) owned a plot of land consisting of five lots. Company had a first mortgage and two second mortgages on the property. Company's subsequent default on the first mortgage led to a judicial foreclosure and the sale of the property to Christopher Firth, who assigned his bid to Company. To reacquire the property, Company gave five purchase-money mortgages to Sophie Duer.

---

[8]Civil Code sections 1213, 1214; *Thaler v. Household Finance Corp., supra*, 80 Cal.App.4th at page 1099.

[9]Civil Code section 2987; *First Nat. Bank v. Silva* (1927) 200 Cal. 494, 495 [254 P. 262]; see *Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586, 600-601 [77 Cal.Rptr.2d 752].

[10]See *Isaac v. City of Los Angeles, supra*, 66 Cal.App.4th at pages 600-601.

[11]Civil Code section 2898, subdivision (a); *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1314 [88 Cal.Rptr.2d 758].

[12]*Costanzo v. Ganguly, supra*, 12 Cal.App.4th at page 1090; see also *DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 737-738 [278 Cal.Rptr. 778]; *Ziegler v. Barnes* (1988) 200 Cal.App.3d 224, 231, footnote 6 [246 Cal.Rptr. 69]; Miller & Starr, *supra*, section 10:236, page 747 and footnote 10 and the cases cited therein.

[13]*Costanzo v. Ganguly, supra*, 12 Cal.App.4th at page 1090.

[14]*Duer v. Jaeger* (1921) 113 Misc. 743 [186 N.Y.S. 584].

In *Duer*, the court determined whether the second mortgages, which reattached to the property upon Company's repurchase, took priority over Duer's purchase-money mortgages. According to the court, the creation of the new purchase-money mortgage and reattachment of the second mortgages occurred at the same time in a single, indivisible transaction.[15] "As to time, they became liens 'in one breath' and at the same instant. In time, neither became a lien ahead of the other. . . ."[16] Therefore, the old mortgages, while technically superior in time, in effect lose any claim to priority under the "first in time, first in right" rule when they are extinguished by foreclosure.

The court reasoned that revival, being a remedy in equity, did not allow the second mortgages to take a higher position in the order of priority.[17] In plain language, the court said: "To make these second mortgages over into first mortgages would be wrong. The person who took the new purchase-money mortgages parted with the money which made possible the revivor. It was by her aid that the realty company took title and the second mortgages were restored."

The court continued: "If the defendants be accorded a lien subordinate to that of the plaintiffs, they will have lost nothing, and, indeed, have gained much. They had second mortgages; they lost them; they had them again. If the plaintiff's mortgages be given the inferior lien, the second mortgages will have blossomed into first mortgages, and their owners will have acquired an advantage for which there was no equitable consideration."[18] The New York court held, therefore, that equity required that the second or junior mortgages resume their original position in the order of priority.

An Arizona appellate court agreed. In *Transamerica Financial Services, Inc. v. Lafferty*,[19] an Arizona court held that a revived lien is subordinate to a new purchase-money mortgage.[20] In that case, Robert and Rosalinda Guerrero had a first and second deed of trust on their parcel of real property. At a trustee's sale under the first deed, Carl Lafferty purchased the property. Lafferty then sold the property back to the Guerreros, who in turn executed two deeds of trust in favor of Lafferty. Transamerica Financial Services

[15]*Duer v. Jaeger, supra,* 113 Misc. at page 745 [186 N.Y.S. at page 585].
[16]*Duer v. Jaeger, supra,* 113 Misc. at page 745 [186 N.Y.S. at page 585], citations omitted.
[17]*Duer v. Jaeger, supra,* 113 Misc. at page 746 [186 N.Y.S. at page 586].
[18]*Duer v. Jaeger, supra,* 113 Misc. at page 746 [186 N.Y.S. at page 586].
[19]*Transamerica Financial Services, Inc. v. Lafferty* (1993) 175 Ariz. 315 [856 P.2d 1188].
[20]See *Transamerica Financial Services, Inc. v. Lafferty, supra,* 175 Ariz. at page 316 [856 P.2d at page 1194].

(Transamerica), the holder of the original second deed of trust, brought an action for declaratory relief.

Transamerica argued that, upon the Guerreros reacquisition or repurchase of the property, its lien reattached and had priority over Lafferty's liens. In addressing the lien priority issue, the court defined a purchase-money mortgage as a " 'mortgage on land executed by the purchaser of the land contemporaneously with the acquirement of the legal title thereto, or afterwards, but as a part of the same transaction . . . .' "[21] Based solely on the automatic priority given to such purchase-money mortgages, the court held that Lafferty's liens were superior to Transamerica's lien.[22] Although the character of purchase-money mortgages are determined at the time of their creation, and thus, there could be multiple purchase-money liens on a single parcel of property, the Arizona court's opinion appears to recognize that the mortgagee that puts forward the purchase money for the current transaction is entitled to lien priority.

Another court, in addressing a similar situation, explained it in this way: " 'It is a fundamental principle of law, albeit arrived at by some sort of legal legerdemain, that where a purchase money mortgage is taken back in consideration of a conveyance to a grantee, the purchase money mortgage, or the rights thereto, become vested before or in the exact point of time as the grantee acquires title and that subsequently the rights of the purchase money mortgage holder stand as a buffer between the interest of the grantee in the land and other lien holders, even though the other liens are senior in time of acquisition. [Citations.] This legal fiction has been promulgated by the law for the logical and commendable reason that it is only through the contribution of the purchase money mortgagor [sic] that the security ever came into being, and by granting to the purchase money mortgagor [sic] priority other lienors are in no wise damaged or injured or detrimented, for as was stated if it were not for the willingness of the purchase money mortgagor [sic] to convey to the grantee, nothing would exist to which the other liens could attach even in a subordinate position. . . .' "[23]

We find the above reasoning persuasive. Designation of the new purchase-money deed of trust as the senior lien does not change or diminish the status

---

[21]See *Transamerica Financial Services, Inc. v. Lafferty, supra,* 175 Ariz. at page 315 [856 P.2d at page 1193].

[22]See *Transamerica Financial Services, Inc. v. Lafferty, supra,* 175 Ariz. at page 316 [856 P.2d at page 1194].

[23]*County of Pinellas v. Clearwater Fed. Sav. & L. Ass'n* (Fla.Dist.Ct.App. 1968) 214 So.2d 525, 528-529, quoting trial court's opinion in a case involving a judgment lien.

of the revived junior lien. The junior lien retains its original place in the order of priority.[24] Additionally, the junior lienholder is held to the "general assumption that one taking a purchase money trust deed—especially in second position—knows the value of his or her security and the risk attendant to it."[25] After agreeing to take a junior lien on the property, it would defy reason and equity to elevate the junior lien above its bargained-for position. While the junior lienholder accepted the risk that the security would be inadequate, the new senior lienholder would not have advanced the substantial funds necessary for the repurchase if it was not assured that it would have the rights and remedies associated with lien priority.[26]

Rather, the new purchase-money mortgagee that provides the funds necessary for the repurchase by the original owner assumes that he is taking the place of the original senior lienholder. As the result of the foreclosure and repurchase, the original senior lien is satisfied and a new lien is created. In essence, the new note simply replaced the old note.[27] The new purchase-money lien takes priority over any revived junior lien. In the absence of fraud, it would be a "flagrant injustice" to hold otherwise.[28]

If we assume, as do the parties, that the junior lien reattaches after the original owner reacquires the property,[29] reattachment occurs simultaneously with the creation of the new purchase-money deed of trust.[30] Furthermore, as the cases suggest, reattachment or revival occurs as a function of equity.[31] The revived junior lien therefore is an equitable as opposed to a legal encumbrance.[32] All else being equal, the law prefers legal over equitable

[24]See *Smith v. State Savings & Loan Assn.* (1985) 175 Cal.App.3d 1092, 1097 [223 Cal.Rptr. 298]; *Friery v. Sutter Buttes Savings Bank* (1998) 61 Cal.App.4th 869, 878 [72 Cal.Rptr.2d 32].

[25]*Lawler v. Jacobs* (2000) 83 Cal.App.4th 723, 736 [100 Cal.Rptr.2d 52], citing *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668 [85 Cal.Rptr.2d 292, 976 P.2d 843] and *Brown v. Jensen* (1953) 41 Cal.2d 193, 197 [259 P.2d 425]; see also *Friery v. Sutter Buttes Savings Bank, supra,* 61 Cal.App.4th at page 878.

[26]See *County of Pinellas v. Clearwater Fed. Sav. & L. Ass'n, supra,* 214 So.2d at page 529.

[27]See *Ziegler v. Barnes, supra,* 200 Cal.App.3d at page 231, footnote 6; *Howell v. Dowling* (1942) 52 Cal.App.2d 487, 497-498 [126 P.2d 630].

[28]*Duer v. Jaeger, supra,* 113 Misc. at page 746 [186 N.Y.S. at page 586].

[29]See Civil Code section 2930; *Jensen v. Duke* (1925) 71 Cal.App. 210, 212; see also *Lindsey v. Meyer* (1981) 125 Cal.App.3d 536, 544 [178 Cal.Rptr. 1].

[30]See *Transamerica Financial Services, Inc. v. Lafferty, supra,* 175 Ariz. at page 316 [856 P.2d at page 1194]; *Duer v. Jaeger, supra,* 113 Misc. at page 745 [186 N.Y.S. at page 585].

[31]See, e.g., *Duer v. Jaeger, supra,* 113 Misc. at page 746 [186 N.Y.S. at page 586].

[32]See 2001 supplement to Miller & Starr, *supra,* section 8:51.1, page 36; *Duer v. Jaeger, supra,* 113 Misc. at page 746 [186 N.Y.S. at page 586].

liens.[33] Accordingly, as between two simultaneously created and recorded liens on real property, the legal lien has priority.[34]

In this case, the foreclosure sale extinguished DMC's lien. Without Downey's loan, DMC would have been left holding a wiped out junior lien without any legal claim to repayment.[35] The money advanced by Downey, therefore, afforded DMC a second bite at the apple. Regardless of whether the unexpected opportunity would be fruitful, DMC was no worse off than before the repurchase.[36] Under these circumstances, we conclude that, when the original owner's repurchase of the property after a trustee's sale revives the junior deed of trust, that lien remains second to the purchase-money deed of trust that essentially replaced the original senior lien and made possible the repurchase, and hence, the revival of the junior lien.

## 5. *Disposition*

We affirm the judgment. Defendant shall recover its costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.

---

[33]*Brock v. First South Savings Assn.* (1992) 8 Cal.App.4th 661, 675 [10 Cal.Rptr.2d 700].

[34]*Brock v. First South Savings Assn., supra,* 8 Cal.App.4th at page 675.

[35]See Code of Civil Procedure section 580b; *In re Marriage of Oropallo* (1998) 68 Cal.App.4th 997, 1003-1004 [80 Cal.Rptr.2d 669].

[36]See *County of Pinellas v. Clearwater Fed. Sav. & L. Ass'n, supra,* 214 So.2d at page 527.