[No. B123931. Second Dist., Div. Two. Oct. 14, 1999.]

SHERWOOD-TRIMBLE MEDICAL GROUP, Plaintiff and Appellant, v. 10001 VENICE BOULEVARD PARTNERSHIP et al., Defendants and Respondents.

**COUNSEL**

Cameron & Dreyfuss, Lawrence J. Dreyfuss and Steven P. Haskell for Plaintiff and Appellant.

Nona Williams for Defendants and Respondents.

**OPINION**

**MALLANO, J.**\*—Plaintiff and appellant Sherwood-Trimble Medical Group, a California general partnership (Sherwood-Trimble), appeals from that portion of the judgment entered May 7, 1998, decreeing that a deficiency judgment would not lie against defendants and respondents 10001 Venice Boulevard Partnership, a California general partnership (10001 Venice), and two of its partners, Tuguo Sano and Norma Salceda (respondents).

### The Stipulated Facts

Sherwood-Trimble owned a medical practice located at 10001 Venice Boulevard in Los Angeles. The Vendunn Company, a corporation (Vendunn), owned the real property at that address. The five individuals who were the partners in Sherwood-Trimble also owned all of the shares of Vendunn in the same respective percentages of interest. 10001 Venice desired to purchase both the medical practice and the real property. Two of the partners of 10001 Venice were also partners of Sherwood-Trimble and shareholders of Vendunn.

In a purchase and sale agreement and escrow instructions, Sherwood-Trimble and Vendunn, together described as the "[s]eller," and 10001 Venice, as the "[b]uyer," effected the sale of the medical practice and the real property, collectively described as the "Property," on the following terms. The instrument stated that "The purchase price . . . of the Property shall be Six Million Dollars . . . ." Outside financing was obtained, taking the form of a note for $2.5 million secured by a first trust deed and a note for $1 million secured by a second trust deed on the real property. The sellers took back a "security purchase money promissory note" (the original note) for $2 million secured by a third trust deed on the real property and also, by means of a "security agreement," by the personal property belonging to the medical practice. Cash made up the $500,000 balance of the purchase price.

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The $6 million purchase price was allocated: $4.8 million to the real property and $1.2 million to the medical practice.

Thereafter, the original note held by the sellers was "superseded" by an "amended & restated secured purchase money promissory note" (the amended note), in the same amount of $2 million but with different maturity date, payment schedule and interest rate. Its sole payee was Sherwood-Trimble. Sometime before that, Vendunn liquidated and its assets were distributed to its shareholders. The sole reference to this transfer in the stipulated facts is as follows: "Sometime prior to October 23, 1991, Vendunn liquidated; pursuant to a plan of liquidation, its assets were distributed to its shareholders. Thereafter the sole payee on the Amended Note is Sherwood-Trimble." It is a mystery why the amended note ended up payable only to Sherwood-Trimble, one we will attempt to solve. Since 1996, 10001 Venice made no payments on the amended note. The current amount due is $2 million, plus interest and late fees of $735,000.

*Procedural History*

Sherwood-Trimble brought suit on the $2 million amended note and deed of trust and security agreement seeking judicial foreclosure and a deficiency judgment. In its complaint, Sherwood-Trimble alleged that the original note was payable to it alone, with no reference to Vendunn, an allegation which is at odds with the stipulated facts. The parties submitted to binding arbitration with the proviso that the decision of the arbitrator regarding whether a deficiency judgment would lie against respondents would be appealable. A judgment of foreclosure and order of sale was entered upon the arbitrator's award determining that $2,735,000 in principal, interest and late charges was owing on the amended note and ordering that the real property securing the amended note be sold. The judgment also decreed, in accordance with the arbitrator's award, that Code of Civil Procedure section 580b[1] barred a deficiency judgment against respondents. Section 580b reads, in pertinent part, as follows: "No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser."

This appeal ensued.

---

[1]All further statutory references are to the Code of Civil Procedure.

*Issue*

Is a vendor of personal property, who, along with a vendor of real property, sells its property in a transaction in which both vendors take back from the buyer a single purchase money promissory note secured by a deed of trust on the real property and, by a security agreement, by the personal property, barred from seeking a deficiency judgment against the buyer under section 580b?

*Discussion*

This appears to be a case of first impression in California.

Sherwood-Trimble seeks to avoid the bar of section 580b by claiming that it is not a vendor within the meaning of that section simply because it sold only the medical practice and not real property. We note preliminarily "that the term 'vendor' in section 580b must be construed liberally . . . ." (*Costanzo* v. *Ganguly* (1993) 12 Cal.App.4th 1085, 1090 [16 Cal.Rptr.2d 55].) In the transaction before us, Sherwood-Trimble sold its medical practice to respondents as part of a $6 million deal. By agreement, $1.2 million (or 20 percent) of the $6 million was allocated to the medical practice and $4.8 million (or 80 percent) to the real property. As $500,000 was paid in cash and the original note was for $2 million, the note and the deed of trust securing it must have been given, in part, to secure payment of the balance of the purchase price of the real property. Pro rata, 80 percent or $1.6 million of the $2 million note would have applied to secure such payment.

The transaction thus described falls within the literal language of section 580b. In substance, the first paragraph of section 580b provides that no deficiency judgment shall lie (1) after the sale of real property, (2) for the failure of the purchaser to complete his or her purchase obligations secured by a deed of trust, (3) given to the vendor to secure payment of the balance of the purchase price of the real property sold. All the elements are present here: (1) 10001 Venice Boulevard was sold, (2) the buyers failed to pay the purchase money note which was (3) secured by a deed of trust on the property given to the vendor of the real property, Vendunn (and to Sherwood-Trimble as well), to secure payment of the balance of the purchase price of the real property sold.

Authorities discussing mixed collateral security transactions are illuminating. Hetland and Hansen, in the article entitled *The "Mixed Collateral" Amendments to California's Commercial Code - Covert Repeal of California's Real Property Foreclosure and Antideficiency Provisions or Exercise in Futility* (1987) 75 Cal.L.Rev. 185 state: ". . . [P]osit a creditor unfamiliar with

California's real property system and holding an obligation secured primarily (at least in the creditor's mind) by personal property. Suppose the creditor, perhaps in what he believes to be an excess of 'caution,' takes an additional security interest in California land. Whatever importance the hypothetical creditor may attach to his real property security, the fact is, he secured the entire obligation by a security interest in California real property; and whatever he may believe, he did not create a separate obligation separately secured by what he may see as an incidental real property security interest. Merely by acquiring the real property security interest, the creditor subjects himself and the single obligation secured by both real and personal property to the full panoply of one-action, *antideficiency*, fair value, and reinstatement provisions of the California Code of Civil Procedure and Civil Code" (*id.* at pp. 191-192, fns. omitted, original italics omitted and italics added, citing, among other authorities, *Walker* v. *Community Bank* (1974) 10 Cal.3d 729 [111 Cal.Rptr. 897, 518 P.2d 329] (*Walker*)). In *Walker*, a bank refinanced debts of a debtor, taking a single debt secured by both real and personal property. The bank elected to judicially foreclose only on the personal property. The court held that by so doing, the bank lost its security interest in the real property under section 726, which provides that there can be but one form of action for the recovery of a debt secured by a mortgage on real property. (*Walker*, *supra*, at p. 733.)

In volume 4 of Miller and Starr, Current Law of California Real Estate (2d ed. 1989) section 9:180, page 596 states: "When a deed of trust and a personal property security interest are given to secure the combined purchase of both real property and personal property (such as furniture and furnishings), they are subject to the real property purchase-money anti-deficiency limitations. [¶] For example, if the beneficiary receives a trust deed and a personal property security interest to secure the *same obligation*, he can foreclose the lien on the personal property either before or after he has foreclosed the trust deed. However, if both instruments are given to secure the payment of a combined purchase price of real and personal property, the beneficiary-mortgagee cannot recover a deficiency judgment after a foreclosure of the personal property security interest if the deed of trust is a 'purchase-money' security instrument." (Citing § 580b and *Freedland* v. *Greco* (1955) 45 Cal.2d 462 [289 P.2d 463], fns. omitted (*Freedland*).) In *Freedland*, the sellers of an off-sale liquor business financed $7,000 of the purchase price by taking back two notes for $7,000, one secured by a chattel mortgage on the equipment sold and another secured by a second trust deed on real property owned by the buyer. When the buyer defaulted, the sellers had the trustee under the trust deed sell the real property under the power of sale contained in the trust deed. The sale did not yield sufficient funds to pay

off the balance buyer owed on the notes. In the meantime, the sellers also brought an action to foreclose the chattel mortgage and for a deficiency judgment. With respect to the existence of two notes, the court stated: "If, in the instant case, there had been only one note, secured by a chattel mortgage as well as a trust deed, which represented the debt of [the buyer] to [the sellers], *it is clear that [the sellers] would not be entitled to a deficiency judgment under the plain wording of section 580d* [no deficiency judgment lies upon a note secured by a deed of trust on real property sold under power of sale contained in the deed of trust]. . . . It would be a note 'secured by a deed of trust upon real property' upon which there could not be a judgment for 'any' deficiency. There is no limitation in that section that a note must be secured solely by a trust deed. Thus, if the note is secured by a trust deed on real property the section applies even though it may also be secured by other security." (*Id.* at pp. 465-466.) The court concluded its discussion of the two notes by declaring: "The question is, therefore, whether the fact that a separate note, secured by a chattel mortgage, changes the picture legally. We think it does not where, as here, both notes represented only a single sum owing from defendant to plaintiffs." (*Id.* at p. 467.)

Here, we have but one note secured by two instruments: a security agreement pertaining to personal property and a trust deed on real property. Just as the deed of trust in *Freedland* was "a deed of trust upon real property" within the meaning of section 580d despite the additional security in personal property, the deed of trust here is "a deed of trust . . . given to the vendor to secure payment of the balance of the purchase price of [the] real property [sold]" within the literal language and meaning of section 580b. Unlike *Freedland,* here the note was a purchase money security instrument and, accordingly section 580b applies.

In another mixed collateral security transaction, *Gates v. Schuster* (1964) 227 Cal.App.2d 287 [38 Cal.Rptr. 644] (*Gates*), sellers sold real property together with a beer distributing business and took back a promissory note secured by a deed of trust on the real property. On the buyers' default, the sellers sued, seeking a deficiency judgment, which was denied by the trial court pursuant to section 580b. On appeal, the sellers "contend[ed] . . . section 580b [was] not applicable for the reason that the transaction involved both real and personal property." (*Gates, supra,* at p. 288.) The court held that section 580b applied, concluding that "The contract provided solely for a note secured by a trust deed on certain real property." (*Gates, supra,* at p. 288.) Accordingly, that the transaction also involved personal property did not prevent the application of section 580b.

We have before us a deed of trust and a security agreement given to secure payment of the balance of the combined purchase price of both real and

personal property. Had Vendunn brought suit seeking the deficiency judgment, clearly the bar contained in section 580b would apply, as Vendunn could not have contended it was not a vendor of real property. There is no reason why Sherwood-Trimble should not be similarly barred.

It is significant that Vendunn liquidated and distributed its interest in the original note to its shareholders and that they have taken no action in their own names in this regard. Instead, they allowed their interest to go into limbo when the amended note was made payable only to Sherwood-Trimble. These same individuals, as partners of Sherwood-Trimble, brought suit seeking a deficiency judgment which Vendunn, as the vendor of the real property, would have been denied. In their complaint, it is as if Vendunn never existed. They claim that since Sherwood-Trimble sold no real property, it was not a vendor under section 580b. We conclude that they were attempting an end run around section 580b which must fail, based on the foregoing authorities.

We address the remaining contentions of Sherwood-Trimble. Sherwood-Trimble argues that respondents could have separately purchased the real property and the personal property. The fact remains that respondents did not. Placing the shoe on the other foot, Sherwood-Trimble could have bypassed section 580b by insisting on selling the medical practice separately, for example, in a concurrent escrow contingent on the closing of the sale of the real property. It was not compelled to sell it in a single transaction. By doing so, it might possibly have gained an advantage such as obtaining more favorable financing. In any event, it made its bed and must lie in it.

Sherwood-Trimble contends that *Kistler* v. *Vasi* (1969) 71 Cal.2d 261 [78 Cal.Rptr. 170, 455 P.2d 106] (*Kistler*) establishes that it is not a vendor within the meaning of section 580b. That case involved a suit brought by real estate brokers who had accepted a note secured by a second deed of trust as their commission on a sale of real property. The trial court ruled that section 580b barred any recovery on the note. The Supreme Court reversed, holding that the real estate brokers were not vendors under that section, but rather lenders in that they lent their commission to the buyer to help complete the sale. *Kistler* does not help Sherwood-Trimble as it was acting not as a broker, or someone assisting in the financing of a sale of real property, but as a seller who took back a deed of trust securing the balance owing on both real and personal property. The Supreme Court in *Kistler* pointed out that "The parties could have chosen another method for the payment of plaintiffs' commission that would have afforded defendants the

protection of section 580b." (*Kistler, supra,* at p. 264.) Similarly, as we have observed, Sherwood-Trimble could have insisted on separate transactions and avoided the application of section 580b.

Sherwood-Trimble also relies on *Spangler* v. *Memel* (1972) 7 Cal.3d 603 [102 Cal.Rptr. 807, 498 P.2d 1055] (*Spangler*). There, the Supreme Court faced a situation where a vendor sold real property improved by a single-family residence to real estate developers who leveled the residence and constructed a three-story commercial office building in its place. The vendor agreed to subordinate the purchase money note she received to a construction loan in return for the buyers' personal guarantees and waiver of their protection from deficiency judgments. The office building was not a success, and the construction lender eventually acquired the property through foreclosure. The seller sued the buyers on their guarantees. The court concluded that ". . . the subordination clause situation is sufficiently different from the standard purchase money mortgage situation to remove it from the automatic application of section 580b and to require an analysis of this factual setting in light of the purposes of section 580b in order to determine the applicability of that section." (*Id.* at pp. 611-612.) The court held that ". . . when in the sale of real property for commercial development, the vendor pursuant to the agreement of sale, subordinates his purchase money lien to the lien securing the purchaser-developer's construction loan and thereafter, upon the default of the purchaser-developer, loses his security interest after sale or foreclosure under the senior lien, section 580b should not be applied to bar recovery by the junior vendor lienor of the unpaid balance of the purchase price of the property." (*Id.* at p. 614.) The court reasoned that since the success of the commercial development depends upon the competence, diligence and good faith of the developer-purchaser, it was proper that the developer-purchaser and not the vendor bear the risk of failure. *Spangler* is of no assistance to Sherwood-Trimble as the transaction before us is not a variation on the standard purchase money deed of trust. There is no subordination clause, commercial development or anything equivalent present here.

Sherwood-Trimble claims that applying section 580b here will not further the purposes of the statute. Had we found that the transaction was a variation on the standard purchase money deed of trust transaction, we would be obligated under *Spangler* to determine whether the purposes of section 580b are present. ▪ Those purposes are explained in *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 42 [27 Cal.Rptr. 873, 378 P.2d 97]: "Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the

land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales." Sherwood-Trimble contends that these purposes are not present to warrant the application of section 580b because there was no risk of overvaluation of the real property since "its sale price was previously fixed between entities with common partners/shareholders [and] . . . there is no evidence here that . . . [r]espondents were unable to service their debt from their purchase of the business because of a general depression or the decline of property values. The debt was not serviced because the business failed, apparently for reasons related to the provision of medical services."

The record is silent as to whether the real property was sold for its true market value (however, we note that the value allocated to the real property was $4.8 million, against which there were loans totaling $5.5 million, $4.4 million of which, pro rata, applied to the real property). The record is also devoid of any evidence as to whether there was a downturn in the real estate market after the purchase. The conclusion that the debt was not serviced because the medical business failed is also unsupported by the record. Thus, Sherwood-Trimble has failed to demonstrate that the purposes of section 580b do not apply to respondents.

■■ Sherwood-Trimble argues that the "amended & restated secured purchase money promissory note" that superseded the original "security purchase money promissory note" bearing the same face amount but with a different maturity date, payment schedule and interest rate and payable only to Sherwood-Trimble "did not involve the sale of real property." If this contention is a repetition of the previous argument predicated upon Sherwood-Trimble's having sold only personal property, we need not repeat ourselves. If, however, Sherwood-Trimble is arguing that the second note was not a purchase money promissory note because it was made to pay off the earlier note, we reject this contention. Apart from noting the note's title—"amended & restated secured purchase money promissory note"—we observe its language: "The Original Note is hereby amended and restated in its entirety. . . ." Thus, " 'Under these circumstances[,] we must conclude that the new note[] w[as a] mere counterpart[] of the old, and that the nature of the debt[] for which [it]stood remained unchanged,' " thus entitling respondents to the protection of section 580b. (*Jackson* v. *Taylor* (1969) 272 Cal.App.2d 1, 5 [76 Cal.Rptr. 891].)

Finally, Sherwood-Trimble contends that respondents waived the antideficiency protection of section 580b by executing the "amended & restated secured purchase money promissory note," relying on *Russell* v. *Roberts* (1974) 39 Cal.App.3d 390 [114 Cal.Rptr. 305] (*Russell*), which permitted such a waiver in exchange for new consideration following the original purchase money sale. After completion of briefing in this matter, *Russell* was expressly disapproved by the Supreme Court in *DeBerard Properties, Ltd.* v. *Lim* (1999) 20 Cal.4th 659, 662 [85 Cal.Rptr.2d 292, 976 P.2d 843], which held that a postsale waiver of antideficiency judgment protection is not permitted.

We conclude that Sherwood-Trimble, as a vendor of personal property, who along with a vendor of real property, sold its property in a transaction in which both vendors took back from the buyer a single purchase money promissory note secured by a deed of trust on the real property and, by a security agreement, by the personal property, is barred from seeking a deficiency judgment against the buyers under section 580b.

### Disposition

The judgment is affirmed.[2]

Boren, P. J., and Nott, J., concurred.

---

[2]The Cosey Company, to which the medical practice was assigned immediately after its purchase with the consent of Sherwood-Trimble and Vendunn, is also a defendant and respondent. As the liability of the Cosey Company for a deficiency judgment is not discussed in appellant's briefs but rather lumped in with the other respondents, we do not discuss its liability separately.