Filed 3/22/16  P. v. Ward CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TRAVIS ADAM WARD,<br><br>    Defendant and Appellant. | D069303, D069304<br><br><br>(Super. Ct. Nos. BAF1300051,<br>BAF1200723)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 17, 2016, be modified as follows:

1.  On page 2, last line, delete case number "E061889" and replace with "BAF1300051."

2.  On page 3, first sentence of the first full paragraph, delete case number "E062113" and replace with "BAF1200723."

3.  On page 16, second sentence of the disposition, delete case number "E061889" and replace with "BAF1300051."

There is no change in the judgment.

McCONNELL, P. J.

Filed 3/17/16  P. v. Ward CA4/1 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>TRAVIS ADAM WARD,<br><br>　　　Defendant and Appellant. | D069303, D069304<br><br><br>(Super. Ct. Nos. BAF1300051, BAF1200723) |

APPEALS from judgments of the Superior Court of Riverside County, Richard T. Fields, Judge.  Affirmed; remanded with directions to the trial court to amend the abstract of judgment.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant Travis Adam Ward appeals from judgments of conviction in two separate cases. With respect to one case, Ward contends that the trial court erred in denying his motion for acquittal at the close of the prosecution's case-in-chief. According to Ward, the prosecution did not present sufficient evidence to support a finding that he used force, violence, duress, menace, or fear of immediate and unlawful bodily injury in committing certain sexual offenses against his daughter. Ward further requests that this court order the trial court to correct the abstract of judgment to reflect the correct dates related to the offenses of which he was charged and convicted in counts 2 and 3. With respect to the other case, Ward requests that this court reduce his felony conviction for a violation of Health and Safety Code section 11377, subdivision (a), to a misdemeanor pursuant to the amendments effectuated by Proposition 47.

We agree with Ward that the trial court should correct the abstract of judgment with respect to the dates related to counts 2 and 3. We reject Ward's other contentions and therefore otherwise affirm the judgments.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Procedural background*

This appeal involves two matters that were consolidated for purposes of appeal. In case No. E061889 (Case 1), a jury convicted Ward of three counts of committing lewd or

lascivious acts against a child under 14 years of age by using force, violence, duress, menace or fear (Pen. Code,[1] § 288, subd. (b)(1); counts 2, 3 & 4) and one count of sexual penetration of a child under 14 years of age and seven or more years younger than Ward by using force, violence, duress, menace or fear (§ 269, subd. (a)(5); count 1). The trial court sentenced Ward to an indeterminate term of 15 years to life in state prison on count 1, plus an additional determinate term of 18 years on counts 2, 3, and 4. Ward filed a timely notice of appeal.

In case No. E062113 (Case 2), Ward pled guilty to one count of unlawful possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 3), and admitted having been convicted of three prison prior offenses within the meaning of section 667.5, subdivision (b). In exchange for Ward's plea, the People moved to dismiss counts 1 (selling, furnishing or transporting methamphetamine; Health & Saf. Code, § 11379, subd. (a)) and 2 (misdemeanor possession of drug paraphernalia; Health & Saf. Code, § 11364.1). The trial court granted the People's motion. The trial court sentenced Ward to a term of 16 months in local custody and imposed but stayed one-year terms for each of the prison priors. Ward filed a timely notice of appeal.

---

[1]	Further statutory references are to the Penal Code unless otherwise indicated.

3

B.    *Factual background*

    1.    *The factual basis related to Case 1[2]*

With the exception of approximately an eight-month period of time, Ward's

daughter J.D. lived with him and other family members at her paternal grandmother's

home in California until she was about 11 years old.[3]

J.D. started to feel "uncomfortable" being around her father between the ages of 10

and 12 because he started touching her inappropriately.  J.D. was "nervous" about telling

anyone that her father had been sexually abusing her because she did not know in whom

she could place her trust.

Although J.D. told her aunt, a police officer, and a child forensic interviewing

specialist about the abuse by her father, J.D. recanted by the time she testified at trial.  At

trial, J.D. said that she did not want to get her father into trouble, and she felt that it was

her fault that he was in trouble.  J.D. acknowledged that she would sacrifice herself for

her father, including stating that she would "jump in front of a bullet" for him.

        a.    *Events surrounding counts 2 and 3*

When J.D. was between 10 and 11 years old, Ward molested J.D. on multiple

occasions.  During this time, J.D. and Ward were living with Ward's mother (J.D.'s

2    We limit our recitation of the factual background of Case 1 to the facts derived
from evidence presented during the prosecution's case-in-chief, given that Ward's only
substantive challenge on appeal in Case 1 is to the trial court's denial of his motion for a
judgment of acquittal at the close of the prosecution's case.

3    J.D. lived in Missouri with her father, and for a brief time with her mother, when
she was not living at her paternal grandmother's home.  Based on J.D.'s testimony, her
mother does not appear to have been a primary care-giving figure in J.D.'s life.

4

paternal grandmother) in an apartment. Ward would "make" J.D. sleep on the couch with him. He would lie behind her and touch her vagina over her underwear. The touching would occur at night, when everyone else in the home had gone to their bedrooms. When Ward first started touching J.D.'s vagina, she "didn't know what to do," so she "just laid there and . . . didn't tell him to stop or anything."

At times when J.D was sleeping on the couch with her father, she would get scared in the middle of the night and would "go crawl in bed with [her] grandma." While J.D. and Ward were living with her grandmother, the touching occurred "more than once, but not, like, every single night."

b. *Events surrounding uncharged acts of abuse that occurred while J.D. and Ward were living in Missouri*

Ward and J.D. moved to Missouri when J.D. was 11 years old. They were in Missouri for approximately eight months. During a portion of this time, Ward and J.D. ended up living alone, and this is "when it started, like, really bad." Ward would touch J.D.'s vagina over her underwear almost every day. On one occasion, Ward raped J.D. Ward had been drinking before joining J.D. in bed. J.D. pretended to be asleep. Ward "rolled" J.D. over and pulled her underwear down. Ward put his knees "to the side of" J.D. and then inserted his penis into her vagina. After the rape, J.D. did not pull her underwear back up because she was continuing to pretend that she was sleeping.

At some point while they were living in Missouri, Ward told J.D., "Don't tell anyone that I'm doing this."

5

Ward and J.D. left Missouri with Ward's new girlfriend. Ward wanted to pick up J.D.'s younger sister in California and bring her back to Missouri. On the way to California, Ward and J.D. slept inside a van at a park. The police came and found drugs in Ward's possession. Ward was arrested, and J.D. was placed in a foster home. J.D.'s mother retrieved her from foster care and took her to live with Ward's sister, Brandy Ward, in California.

         c.     *Events leading to count 4*

In 2012, Ward joined his family to celebrate Thanksgiving at Brandy's home, where J.D. was then living. While at Brandy's house, Ward went into J.D.'s bedroom and stuck his hand inside her pajama pants, touching her vagina over her underwear.

         d.     *Events leading to count 1*

On December 25, 2012, Ward visited with J.D. at Brandy's home. Ward followed J.D. to her bedroom and told her sister to "get out." Ward sat next to J.D. on the bed. J.D. moved closer to the wall, and Ward moved closer to her. Ward stuck his hand inside J.D.'s pajama bottoms. He then inserted a finger into her vagina. J.D.'s vagina hurt the following day. She did not tell anyone because she thought the pain would go away. When the pain did not subside after a few days, J.D. asked Brandy's boyfriend, whom she considered to be like an uncle, to take her to see a doctor. After visiting a doctor, J.D. told Brandy that her father had been sexually abusing her.

2. *The factual basis related to Case 2*

The factual basis for Ward's guilty plea in Case 2 is Ward's admission that on November 1, 2012, he knowingly possessed methamphetamine.

III.

DISCUSSION

A. *The trial court did not err in denying Ward's motion for acquittal under section 1118.1*

Ward contends that the trial court erred in denying his section 1118.1 motion for acquittal because at the end of the prosecution's case, there was insufficient evidence that the offenses involved in counts one through four were accomplished by " 'force, violence, duress, menace, or fear of immediate and unlawful bodily injury.' " (§§ 288a, subd. (b)(1), 269, subd. (a)(5).)[4] We conclude that the evidence is sufficient to support a finding that Ward committed the acts by use of duress.

1. *Relevant legal standards*

" 'The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' [Citation.] 'The purpose of a motion under section 1118.1 is to weed out as

---

4      He further contends that the trial court's erroneous denial of his acquittal motion constituted a violation of his federal due process rights.

7

soon as possible those few instances in which the prosecution fails to make even a prima facie case.' [Citations.] The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.' [Citation.] The sufficiency of the evidence is tested at the point the motion is made." (*People v. Stevens* (2007) 41 Cal.4th 182, 200 (*Stevens*).)

We review independently a trial court's ruling pursuant to a motion for acquittal under section 1118.1 to determine whether the evidence is sufficient to support a conviction. (*Stevens*, *supra*, 41 Cal.4th at p. 200.)

Substantial evidence is "evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320.) "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

2.      *Analysis*

The People's theory at trial was that Ward committed the sexual offenses against J.D. by use of fear or duress. A review of the record demonstrates that it contains

8

sufficient evidence to support a finding that the offenses were committed by use of duress.

Duress, in the context of the sexual offenses at issue—i.e., sexual penetration and lewd acts—is " 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004-1005, 1010, italics omitted [definition of duress with respect to lewd acts]; *People v. Senior* (1992) 3 Cal.App.4th 765, 774-775 (*Senior*) [definition of duress with respect to sexual penetration].)

Duress, by its nature, "involves psychological coercion" of the victim. (*Senior*, *supra*, 3 Cal.App.4th at p. 775.) Duress "can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes." (*Ibid.*) " 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*Ibid.*, quoting *People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 239.) Other relevant factors may " 'include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.)

In addition, the fact that the victim testifies that the defendant did not use force or threats does not require a finding that no duress was present; rather, the victim's testimony must be considered in light of the victim's age and the victim's relationship to the defendant. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13-14 (*Cochran*).) In *Cochran*, the defendant was convicted of multiple counts of aggravated sexual assault and forcible lewd conduct against his nine-year-old daughter. (*Id.* at pp. 11, 15.) In affirming the defendant's convictions, the Court of Appeal concluded that the sexual assaults were accomplished by duress because the victim "engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent." (*Id.* at pp. 15-16.) The court further noted that, although the existence of a parent/child relationship between the victim and his/her molester does not establish duress as a matter of law, "as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." (*Id.* at p. 16, fn. 6.)

This case is not that rarest of cases. Although J.D. never testified that she was afraid of her father, that he threatened to punish her if she did not submit to his advances, or that he grabbed her or forced her to engage in the sexual acts, there was other evidence from which one could conclude that the necessary element of duress was present in this case. For example, with respect to counts 2 and 3, which occurred before J.D. and Ward moved to Missouri, Ward was J.D.'s sole parental figure and her main caregiver. J.D.

10

was only 10 or 11 years old when the abuse started. Given the nature of this relationship and J.D.'s young age, a reasonable fact-finder could conclude that she was particularly vulnerable to the psychological coercion that arises from the implicit threat of adverse consequences to that parent/child relationship.

With respect to the conduct charged in counts 1 and 4, which occurred after Ward and J.D. returned to California and after Brandy had taken responsibility for J.D.'s physical custody, these incidents were still between a father and his young daughter. Further, by this point in time, Ward had made the express statement to J.D., "Don't tell anyone that I'm doing this." "A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (*Senior*, *supra*, 3 Cal.App.4th at p. 775.) The evidence of Ward's warning to J.D. that she not tell anyone about what he was doing constitutes additional evidence to support a finding that Ward's sexual offenses in counts 1 and 4 were accomplished through duress.

The evidence presented in the prosecution's case-in-chief was sufficient to show that all of the offenses were accomplished through the use of duress, and was therefore sufficient to sustain Ward's convictions on all four charges. The trial court thus did not err in denying Ward's motion for acquittal under section 1118.1 at the close of the prosecution's case.[5]

---

[5]    Given that we find that the court did not err in denying Ward's motion for acquittal, we reject Ward's contention that the trial court's denial of the motion constituted a violation of Ward's due process rights.

11

B.     *The abstract of judgment should be amended to reflect the correct dates for Ward's offenses*

Ward contends that the abstract of judgment contains a clerical error regarding the dates of the commission of the offenses identified in counts 2 and 3.  The People agree with Ward.

The information charged Ward with committing counts 2 and 3 between November 17, 2010 and November 16, 2011.  The jury convicted Ward on counts 2 and 3 as charged.  The abstract of judgment, however, indicates that Ward committed counts 2 and 3 in 2012.

It is clear that the abstract of judgment contains a clerical error with respect to counts 2 and 3.  We will therefore direct the trial court to amend the abstract of judgment to reflect the correct dates with respect to counts 2 and 3.

C.     *Ward must file an application in the trial court to have his felony drug conviction reduced to a misdemeanor*

Ward contends that this court should reduce his felony conviction in Case 2 for a violation of Health and Safety Code section 11377, subdivision (a), to a misdemeanor pursuant to the amendments effectuated by Proposition 47, under the authority of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  According to Ward, because his case is not yet final given the pendency of his appeal, he is entitled to the benefit of a change in the law that occurs prior to finality.

"On November 4, 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act [(Proposition 47)] . . . ."  (*People v. Rivera* (2015) 233

12

Cal.App.4th 1085, 1089.) "Proposition 47 makes certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants. These offenses had previously been designated as either felonies or wobblers (crimes that can be punished as either felonies or misdemeanors)." (*Id.* at p. 1091.)

Proposition 47 also included a new statutory provision whereby an individual already serving a felony sentence for the reclassified offenses may petition for a recall of his or her sentence. (See § 1170.18, subd. (a).) Specifically, section 1170.18 provides the statutory remedy for "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense." (*Id.*, subd. (a).) Under this provision, such a person "may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, . . . as those sections have been amended or added by this act." (*Ibid.*)

Section 1170.18, subdivision (b) specifies the procedure for a trial court to follow "[u]pon receiving a petition under subdivision (a)." If the trial court finds that "the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . , unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Ibid.*) An "unreasonable risk of danger to public safety" is

13

defined in section 1170.18, subdivision (c) as "an unreasonable risk that the petitioner will commit" one of the "super strike" offenses listed in section 667, subdivision (e)(2)(C)(iv). "In exercising its discretion, the court may consider all of the following: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

According to Ward, because the judgment in his case was not final at the time Proposition 47 became effective, pursuant to *Estrada*, he is entitled to have this court reduce his conviction to a misdemeanor under amended Health and Safety Code section 11377, and he need not utilize the resentencing procedure established in section 1170.18. We disagree.

"The rule in *Estrada* . . . is not implicated where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793.) In the absence of an express saving clause, one will be implied if the Legislature or electorate has " 'demonstrate[d] its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " (*Ibid.*)

14

For example, the procedure set forth in section 1170.126, which permits a prisoner to seek resentencing under the Three Strikes Reform Act (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C)), has been held to constitute "the functional equivalent of a saving clause." (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 172.) Like the resentencing petition process created under section 1170.126, subdivision (b), the resentencing petition process contained in section 1170.18, subdivision (a) expressly applies to persons who are "currently serving a sentence" for a crime that would have been a misdemeanor after the passage of Proposition 47. By setting forth specific procedures as to those persons who were "currently serving a sentence" at the time the initiative took effect (§ 1170.18, subd. (a)), the electorate effectively and clearly "demonstrate[d] its intention" (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1049) that such persons follow these specified procedures before being resentenced. We therefore conclude that section 1170.18 operates as the functional equivalent of a saving clause.

Ward is thus not entitled to have this court automatically reduce his conviction under Health and Safety Code section 11377 to a misdemeanor. Rather, Ward must utilize the procedure specified in section 1170.18, which requires that he file a petition for recall of sentence in the trial court after the judgment in this case becomes final. The trial court shall then employ the procedures outlined in section 1170.18, subdivision (b), to determine whether Ward should be resentenced to a misdemeanor conviction for his Health and Safety Code section 11377 offense.

IV.

DISPOSITION

The judgments are affirmed.  The matter is remanded with directions to the trial court to amend the abstract of judgment in case No. E061889 to reflect the correct dates with respect to counts 2 and 3.  The trial court shall forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


AARON, J.

WE CONCUR:

McCONNELL, P. J.

PRAGER, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16